UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SUSAN LLOYD,                                    :
              Plaintiff,                        :
                                                :
              v.                                :        No. 5:25-cv-5171
                                                :
PENNSYLVANIA STATE BOARD OF                     :
VETERINARY MEDICINE;                            :
MICHELLE ROBERTS, *VET BOARD*                   :
*ADMINISTRATOR*; ASHLEY KEEFER;                 :
and PAUL JARABECK;                              :
              Defendants.                       :

**O P I N I O N**
**Motion to Dismiss, ECF No. 16 - Granted**

**Joseph F. Leeson, Jr.**                              **March 27, 2026**
**United States District Judge**

## I.      INTRODUCTION

This case arises out of complaints Plaintiff Susan Lloyd made to the Pennsylvania State

Board of Veterinary Medicine ("PSBVM") about the deaths of her service dogs.  Defendants, the

PSBVM and its employees, allegedly interfered with Lloyd's ability to speak at a public meeting

about the complaints.  Defendants have moved to dismiss all claims based on the immunity of

the PSBVM and Lloyd's failure to state a claim.  For the reasons set forth below, Defendants'

Motion to Dismiss is granted.

## II.     BACKGROUND

### A.      Procedural History

Lloyd initiated the above-captioned action on September 5, 2025, based on federal

question jurisdiction against the following defendants: the PSBVM; Michelle Roberts, the Board

Administrator of the PSBVM; Ashley Keefer, legal counsel for the PSBVM; and Paul Jarabeck, a prosecutor for the PSBVM. *See* Am. Compl. ¶¶ 2-5, ECF No. 13. Defendants filed a Motion to Dismiss on November 10, 2025, *see* ECF No. 10, which was dismissed as moot after Lloyd filed an Amended Complaint.

In her Amended Complaint naming the same Defendants, Lloyd asserts the following four causes of action: violations of (I) the Pennsylvania Sunshine Act, 65 Pa.C.S. §§ 701-716, *see* Am. Compl. ¶¶ 85-122, ECF No. 13; (II) the First Amendment right to free speech, *see id.* ¶¶ 123-177; (III) the Fourteenth Amendment right to equal protection- class of one, *see id.* ¶¶ 178-205; and (IV) the Fourteenth Amendment right to due process, *see id.* ¶¶ 206-221.[1] Lloyd seeks monetary relief and various forms of injunctive and declaratory relief. *See id.* at pp. 38-39. Defendants responded by filing a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1)[2] and 12(b)(6). *See* Mot., ECF No. 16. Lloyd filed a brief in opposition. *See* Opp., ECF No. 17.

### B.   Factual Allegations

The pertinent[3] factual allegations in the Amended Complaint are as follows: Two

---

[1]   Counts two through four are brought pursuant to 42 U.S.C. § 1983.

[2]   Defendants' "assertion of Eleventh Amendment immunity is properly considered 'a motion to dismiss the complaint for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1).'" *See Shepherd v. Armitage*, No. 25-6328-KSM, 2026 U.S. Dist. LEXIS 31915, at *4 (E.D. Pa. Feb. 17, 2026) (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996)).

[3]   Lloyd's Amended Complaint contains numerous allegations. All her allegations, even those not specifically mentioned herein, have been considered by the Court in deciding the Motion to Dismiss. However, Lloyd's conclusory allegations, of which there are many, *see, e.g.* Am. Compl. ¶ 18 (alleging "Defendants want to continue to masquerade their fraud to the public that they in fact do not protect the public as stated on their website, but in fact protect vets who kill animals"), are not entitled to the presumption of truth, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

individual veterinarians[4] allegedly "killed" Lloyd's service dogs.  *See, e.g.* Am. Compl. ¶ 77.

Lloyd filed complaints against them, but the PSBVM never investigated.  *See id.* ¶ 155.  Lloyd

claims that Defendants violated her due process rights by not holding a hearing on her

complaints before dismissing the same.  *See id.* ¶ 207.

On August 28, 2025, Lloyd emailed the PSBVM stating ". . . I want to speak at every

future board hearing starting on Sept 5 at 1030 am about vet medmal which occurs in PA

including the death of both of my dogs domino and double stuff who were killed by a vet."  *See

id.* ¶ 12.  *See also* Emails, ECF No. 16-2.[5]  Roberts denied Lloyd's request.  *See* Am. Compl. ¶

13.  Roberts stated:

> Pursuant to the Pennsylvania Supreme Court decision in *Lyness v. State Bd. of
> Medicine*, 605 A.2d 1204 (Pa. 1992), the Board is prohibited from comingling
> prosecutorial and adjudicatory functions. Accordingly, your request for an
> appointment at a future Board meeting for the stated purpose must be denied, as it
> would constitute a violation of the *Lyness* mandate. If you wish to bring a complaint
> to the Board's attention, you may do so through the formal complaint process,
> which is available at pals.pa.gov. In the navigation options on the left side of the
> page, you will find a link to "File a Complaint." A complaint submitted through
> this process will be directed to the Prosecutorial Division for review.

Email dated Aug. 28, 2025, at 02:18:05 PM.  Lloyd wrote back threatening Roberts with civil

action.  *See* Am. Compl. ¶ 14.  Keefer sent Lloyd an email the next morning stating: "I would be

happy to explain why your request will not be accommodated."  *See id.* ¶ 15.  Lloyd responded

by again threatening civil action.  *See* Emails Sept. 4, 2025, at 8:02 AM.  Keefer replied less than

twenty minutes later, stating:

---

[4]    Because the two veterinarians are not parties to this action and given the prejudicial
nature of Lloyd's accusations against them, their names are not included herein.  Also not
included herein are Lloyd's specific allegations of wrongdoing against them because they are not
material to the claims in the above-captioned action.
[5]    *See Pryor v. Ncaa*, 288 F.3d 548, 560 (3d Cir. 2002) (holding that "documents whose
contents are alleged in the complaint and whose authenticity no party questions, but which are
not physically attached to the pleading, may be considered" in deciding a motion to dismiss).

> As explained and pursuant to the Pennsylvania Supreme Court decision in *Lyness v. State Bd. of Medicine*, 605 A.2d 1204 (Pa. 1992), the Board is prohibited from comingling prosecutorial and adjudicatory functions. Accordingly, your request for an appointment at a future Board meeting <u>for the stated purpose of discussing a pending investigation</u> must be denied, as it would constitute a violation of the *Lyness* mandate. If you wish to bring a new complaint to the Board's attention, you may do so through the formal complaint process, which is available at pals.pa.gov. In the navigation options on the left side of the page, you will find a link to "File a Complaint." A complaint submitted through this process will be directed to the Prosecutorial Division for review.

Email dated Sept. 4, 2025, at 8:19 AM.

The next day, September 5, 2025, Lloyd attempted to speak at a public meeting of the PSBVM,[6] but "when" she tried to criticize the PSBVM "they" muted her microphone. *See* Am. Compl. ¶¶ 20, 24, 188. She was "never disruptive" during the meeting. *See id.* ¶ 27. Lloyd alleges that the "meeting was open to any comment about any topic" and "asked for public comments." *See id.* ¶ 24. Lloyd alleges that Defendants allowed other members of the public to speak about whatever they wished, while preventing her from doing the same, which she claims violated her equal protection rights. *See id.* ¶¶ 188, 200. Lloyd claims that Defendants' conduct also violated the Sunshine Act, her First Amendment right to free speech, and her right to due process. *See generally id.* ¶¶ 85-177, 209.[7]

---

[6]   Lloyd alleges that Defendants have concealed the minutes from the September 5, 2025 meeting. *See* Am. Compl. ¶ 82. However, the minutes are available on the Commonwealth of Pennsylvania's website. *See* https://www.pa.gov/agencies/dos/department-and-offices/bpoa/boards-commissions/veterinary-medicine/board-meetings (last visited March 18, 2026). *See also* ECF No. 16-3 (containing a copy of the minutes).

[7]   Additionally, Lloyd alleges she requested all the complaints, including her own, about the veterinarians who allegedly killed her dogs, but Defendants refused to comply. *See* Am. Compl. ¶ 161. She alleges Defendants concealed complaints about these, and other, veterinarians who were allegedly responsible for the deaths of animals. *See id.* ¶¶ 18, 32. Lloyd alleges Defendants destroyed evidence and failed to respond to discovery requests. *See id.* ¶¶ 78-84.

To the extent these allegations could be liberally construed as attempting to state a claim under the Freedom of Information Act ("FOIA"), any such claim would fail because Lloyd does not allege that she exhausted administrative remedies. *See Berg v. Obama*, 574 F. Supp. 2d 509, 527 (E.D. Pa. 2008) (stating that "a plaintiff must allege in his complaint that he exhausted his

III.     **LEGAL STANDARDS**

A.        **Motion to Dismiss Rule 12(b)(1) – Review of Applicable Law**

"[T]here are two types of Rule 12(b)(1) motions: those that attack the complaint on its face and those that attack subject matter jurisdiction as a matter of fact." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (citing *Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir. 1977)). "[A] court must first determine whether the movant presents a facial or factual attack" because the distinction determines the standard of review. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska*, 462 F.3d at 302 n.3). A factual attack challenges "subject matter jurisdiction because the facts of the case . . . do not

---

remedies under FOIA in order to properly plead a case" (internal quotations omitted)). Moreover, Lloyd cannot state a FOIA claim against any of the defendants named here because FOIA applies only to federal agencies. *See McDonnell v. United States*, 4 F.3d 1227, 1249 (3d Cir. 1993) (citing "*Davidson v. Georgia*, 622 F.2d 895, 897 (5th Cir. 1980) (FOIA has no application to state governments)"); *Gorrio v. Briggs*, No. 1:23-cv-01697, 2025 U.S. Dist. LEXIS 146648, at *89-90 (M.D. Pa. July 31, 2025) (dismissing the FOIA claim against the "individually named defendant because FOIA creates disclosure obligations for federal agencies but does not impose individual liability on government personnel").

A claim, if any, under Pennsylvania's Right-to-Know Law ("RTKL") would also fail to state a claim because "Section 1983 does not provide a cause of action for violations of state statutes." *See Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir. 1990). *See also* 63 Pa. C.S. § 3109(a)(1) ("All records under section 708(b)(17) of the Right-to-Know Law, relating to a noncriminal investigation . . . shall be confidential and privileged.").

To the extent Lloyd's allegations relate to discovery sought in the above-captioned action, which has not yet been ordered, they do not support a § 1983 claim because Lloyd has no constitutional or other federal right to discovery at this stage of her case. *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f). . . ."); *Bath Auth., LLC v. Anzzi LLC*, No. 18-00834, 2018 U.S. Dist. LEXIS 179754, at *22-23 (E.D. Pa. Oct. 19, 2018) (explaining the discretionary standards courts have applied for deciding requests for expedited and/or early discovery).

support the asserted jurisdiction." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A factual attack "cannot occur until plaintiff's allegations have been controverted[,]" *Mortensen*, 549 F.2d at 892 n.17, which occurs when the movant files an answer or "otherwise presents competing facts." *Aichele*, 757 F.3d at 358. "When a factual challenge is made, 'the plaintiff will have the burden of proof that jurisdiction does in fact exist,' and the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Davis*, 824 F.3d at 346 (quoting *Mortensen*, 549 F.2d at 891). "[N]o presumptive truthfulness attaches to [the] plaintiff's allegations. . . ." *Id.* (quoting *Mortensen*, 549 F.2d at 891).

**B.      Motion to Dismiss Rule 12(b)(6)– Review of Applicable Law**

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). This Court construes *pro se* pleadings liberally. *See Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). *See also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (A "document integral to or explicitly relied upon in the complaint may be considered." (internal quotations omitted)).  Courts may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The defendant bears the burden of demonstrating the plaintiff failed to state a claim upon which relief can be granted.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### C.      Eleventh Amendment Immunity

"[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies." *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).  "This protection from suit extends to state agencies as well as state officials sued in their official capacities for monetary damages." *A.W. v. Jersey City Pub. Sch.*, 341 F.3d 234, 238 (3d Cir. 2003).  "Individual state employees sued in their official capacity are [] entitled to Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of

pleading an action' against the state." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

"Eleventh Amendment immunity is subject to three exceptions: 1) congressional abrogation, 2) state waiver, and 3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atl.-Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001). Under the second exception, a state's waiver of immunity must "be unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). *See also* 42 Pa. C.S. § 8522(b) (listing the nine areas in which immunity has been waived). Under the third exception, which is based on the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), the "relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages," *MCI Telecomm. Corp.*, 271 F.3d at 506 (citing *Pennhurst II*, 465 U.S. at 102-03). The plaintiff has the "burden of showing a substantial likelihood that he was likely to suffer some future injury at the hands of a named party." *O'Callaghan v. X*, 661 F. App'x 179, 182 (3d Cir. 2016).

### D.      Section 1983 Claims – Review of Applicable Law

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West*, 487 U.S. at 48. The first step for the court analyzing a claim

under § 1983 "is to identify the exact contours of the underlying right said to have been violated." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998).   The court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *See Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Id.*).   Section "1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted).   The court must also determine whether a defendant is acting under color of state law, i.e., whether the defendant is a state actor, which depends on whether there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).   A "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).   "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### E.    First Amendment Free Speech

"The First Amendment generally prevents government from proscribing speech . . . because of disapproval of the ideas expressed." *R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992) (internal citations omitted).   In deciding whether the plaintiff has a free speech right guaranteed by the First Amendment, "the court must determine whether defendant has created a forum, and if so, what type, i.e., was it 'public' or 'limited,' and if 'limited,' in what manner." *Gregoire v. Centennial Sch. Dist.*, 674 F. Supp. 172, 176 (E.D. Pa. 1987).   The Supreme Court has

"identified three types of fora: [1] the traditional public forum, [2] the public forum created by government designation, and [3] the nonpublic forum." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 802 (1985). The courts have identified a sub-category of the designated public forum known as "a *limited* public forum." *Kreimer v. Bureau of Police*, 958 F.2d 1242, 1261 (3d Cir. 1992) (citing *Travis v. Owego-Apalachin Sch. Dist.*, 927 F.2d 688, 692 (2d Cir. 1991)). "When the facilities . . . are limited by the government in respect to the use because of genuine special concerns and public obligations, the locale, though open as a forum, is deemed to be a limited one." *Gregoire*, 674 F. Supp. at 177.

In a limited public form,[8] "content-based restraints are permitted, so long as they are designed to confine the 'forum to the limited and legitimate purposes for which it was created.'" *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 280 (3d Cir. 2004) (citing *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995)). This test "is less strict than that applied in the case of a general open forum." *Id.*[9] "Two limitations remain. Any restrictions on speech must be viewpoint neutral and must be 'reasonable in light of the purpose served by the forum.'" *Id.* (citing *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001) (cleaned up)).

### F.    Equal Protection - Review of Applicable Law

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.

---

[8]    "An example of [a] limited public forum is a university facility open for meetings of student groups, but not for the general public." *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 280 (3d Cir. 2004).

[9]    "Streets and parks are examples of traditional public forums." *Eichenlaub*, 385 F.3d at 280. "Absent a compelling interest, speech in a public forum may not be regulated based upon content. Furthermore, in a public forum any restrictions as to time, place, and manner of speech (1) must be unrelated to content; (2) must be narrowly tailored to serve a significant governmental interest; and (3) must allow alternative ways of communicating the same information." *Id.* (internal quotations omitted).

amend. XIV, § 1. "To succeed on a § 1983 equal protection claim, Plaintiff must allege facts demonstrating 'purposeful discrimination' and that he 'receiv[ed] different treatment from that received by other individuals similarly situated.'" *Green v. Chester Upland Sch. Dist.*, 89 F. Supp. 3d 682, 693 (E.D. Pa. 2015) (internal citations omitted), *aff'd sub nom. A.G. v. Chester Upland Sch. Dist.*, 655 F. App'x 125 (3d Cir. 2016). "To meet the prima facie elements, Plaintiff must allege that he was: (1) a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class." *Id.* (italics omitted) (citing *Oliveira v. Twp. of Irvington*, 41 Fed. Appx. 555, 559 (3d Cir. 2002); *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992)). *See also Cash v. Wetzel*, 8 F. Supp. 3d 644, 664 (E.D. Pa. 2014). To state a claim for a "class-of-one" equal protection violation, a plaintiff must allege that he 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

### G.    Due Process - Review of Applicable Law

The Fourteenth Amendment provides: "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." Property interests are not created by the Constitution. *See The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Rather, "[c]ore to the existence of an individual property interest is the requirement that the plaintiff have 'a legitimate claim of entitlement to' the interest at issue that stems from 'an independent source such as state law' or 'rules or understandings that secure certain benefits.'" *Siemens USA Holdings Inc v. Geisenberger*, 17 F.4th 393, 415 (3d Cir. 2021) (quoting *McKinney v. Univ. of Pittsburgh*, 915 F.3d 956, 960 (3d Cir. 2019) (quoting *Roth*, 408 U.S. at 577)). "The Supreme

Court has made clear 'that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.'" *Geisenberger*, 17 F.4th at 415 (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)). By contrast, a "liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'" *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citing *Vitek v. Jones*, 445 U.S. 480, 493-94 (1980)), or "it may arise from an expectation or interest created by state laws or policies," *see id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974)). After determining the interest at stake, the next question is what process is due to protect this interest. *See Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000). "The touchstone of due process is the protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558.

### 1. Substantive Due Process - Review of Applicable Law

"The touchstone of due process is the protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. To state a claim for a violation of substantive due process rights, a plaintiff must show: (1) the interest at issue is protected by the substantive due process clause; and (2) "the government's deprivation of that protected interest shocks the conscience." *Kane v. Barger*, 902 F.3d 185, 192 (3d Cir. 2018). As to the first element, the Supreme Court has long recognized "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child . . . ." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). *But see A.J. v. Lancaster Cty.,* No. 5:19-cv-01768, 2019 U.S. Dist. LEXIS 221035, at *8 (E.D. Pa. Dec. 23, 2019) (qualifying that a parent's liberty interest "is not implicated by conduct short of actual separation of parent and child"). As to the second element, the defendant's conduct "must exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Miller v. City of*

*Phila.*, 174 F.3d 368, 375-76 (3d Cir. 1999).  "'[O]nly the most egregious official conduct'

violates substantive due process." *J.R. v. Lehigh Cty.*, 534 F. App'x 104, 108 (3d Cir. 2013)

(quoting *Miller*, 174 F.3d at 375).

### 2.      Procedural Due Process - Review of Applicable Law

"To state a claim under § 1983 for deprivation of procedural due process rights, a

plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within

the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures

available to him did not provide 'due process of law.'" *Hill*, 455 F.3d at 233-34 (citing *Alvin v.

Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).  As to the second element, the "fundamental

requirement of due process is the opportunity to be heard at a meaningful time and in a

meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Additionally, to assert a

procedural due process claim against a state actor, the plaintiff "must, at a minimum, prove

recklessness or 'gross negligence' and in some instance may be required to show a 'deliberate

decision to deprive' the plaintiff of due process.'" *Mulholland v. Gov't Cty. of Berks*, 706 F.3d

227, 238 (3d Cir. 2013) (quoting *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250,

1277 (3d Cir. 1994)).  A "state may cure a procedural deprivation by providing a later procedural

remedy." *Bonilla v. City of Allentown*, 359 F. Supp. 3d 281, 297 (E.D. Pa. 2019) (referencing

*Marchionni v. SEPTA*, No. 98-6491, 2000 WL 730348, at *2 (E.D. Pa. June 7, 2000)).

## IV.    ANALYSIS

### A.      All claims against the PSBVM are dismissed.

As the Honorable Jeffrey Schmehl of this Court[10] explained to Lloyd less than two weeks

---

[10]    Judge Schmehl and the Undersigned have been assigned to more than a dozen cases filed
by Lloyd in the last four years alone.

before she initiated the above-captioned action: Lloyd's "§ 1983 claims against . . . the State Board of Veterinary Medicine fail as a matter of law because a state and its arms are not 'persons' under § 1983 and, in any event, enjoy Eleventh Amendment immunity." *See Lloyd v. Pennsylvania*, No. 5:22-cv-05148-JLS, 2025 U.S. Dist. LEXIS 164073, at *13 (E.D. Pa. Aug. 25, 2025) (denying Lloyd's motion to reconsider the order that denied her request to file a fifth amended complaint against various parties, including the Pennsylvania State Board of Veterinary Medicine).

The PSBVM is entitled to immunity under the Eleventh Amendment.[11]  *See MCI Telecomm. Corp.*, 271 F.3d at 503 (The Eleventh "amendment has been interpreted to make states generally immune from suit by private parties in federal court."); *Glunk v. Pa. State Bd. of Med.*, 687 F. App'x 196, 202 (3d Cir. 2017) (holding that the Pennsylvania State Board of Medicine was "immune from a suit for money damages under the Eleventh Amendment").  None of the exceptions to immunity apply here.  First, there has been no congressional abrogation. Second, "the Commonwealth of Pennsylvania ha[s] not waived its immunity in § 1983 civil rights cases." *Petsinger v. Pa. DOT*, 211 F. Supp. 2d 610, 610 (E.D. Pa. 2002).  Pennsylvania also has not waived its immunity to Sunshine Act claims in federal court.  Rather, the Sunshine Act gives the "Commonwealth Court [] original jurisdiction of actions involving State agencies and the courts of common pleas [] original jurisdiction of actions involving other agencies to render declaratory judgments or to enforce this chapter by injunction or other remedy deemed appropriate by the court."  65 Pa. C.S. § 715.  *See also Miller v. Goggin*, 672 F. Supp. 3d 14, 50 n.35 (E.D. Pa. 2023) (stating that because the Pennsylvania Sunshine Act puts original jurisdiction in the Commonwealth Court, it was "unclear whether this Court even has jurisdiction

---

[11]    Defendants make a facial attack to jurisdiction based on Eleventh Amendment immunity.

over Plaintiff's Sunshine Act claim").  As to the third exception, it does not apply to the

PSBVM.  Rather, it applies, if at all, only to § 1983 claims against Roberts, Keefer, and

Jarabeck.  *See MCI Telecomm. Corp.*, 271 F.3d at 503 (explaining that the exception applies to

"suits against *individual state officers* for prospective relief to end an ongoing violation of

federal law" (emphasis added)).

Moreover, the PSBVM is not a "person" under § 1983.  *See Will*, 491 U.S. at 71 (holding

that "neither a State nor its officials acting in their official capacities are 'persons' under §

1983"); *Madden v. N.J. State Parole Bd.*, 438 F.2d 1189, 1190 (3d Cir. 1971) ("[I]t has been

squarely held in this Circuit quite recently that [the a state parole] Board is not a person within

the language of 42 U.S.C.A. Section 1983"); *Zilich v. Doll*, No. 3:13-2814, 2016 U.S. Dist.

LEXIS 2684, at *3-4 (M.D. Pa. Jan. 11, 2016) (adopting the Magistrate Judge's conclusion that

the "SCI Medical Review Board is not a person under § 1983"); *Law Offices of Christopher S.

Lucas & Assocs. v. Disciplinary Bd. of the Supreme Court*, 320 F. Supp. 2d 291, 296-97 (M.D.

Pa. 2004) (holding that the state attorney "Disciplinary Board is not a person within the meaning

of § 1983").  Thus, Lloyd's § 1983 claims in Counts II, III, and IV fail as a matter of law.

All claims against the PSBVM are dismissed with prejudice.[12]

### B.      The § 1983 claims for monetary damages against Roberts, Keefer, and Jarabeck are dismissed.

Eleventh Amendment "protection from suit extends to state agencies as well as state

officials sued in their official capacities for monetary damages."  *A.W.*, 341 F.3d at 238.

---

[12]      This Court finds that leave to amend would be futile.  *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that a court may deny leave to amend if an "amendment would be inequitable or futile"); *Rufo v. Fox*, No. 21-3318, 2022 U.S. App. LEXIS 30518, at *8 (3d Cir. Nov. 3, 2022) (agreeing with the district court that an amendment would be futile where the defendants were immune from suit); *Harper v. Dinella*, 589 F. App'x 67, 69 (3d Cir. 2015) (finding that an amendment would be futile because the claims failed as a matter of law).

However, the Eleventh Amendment does not bar Lloyd's claims against Roberts, Keefer, and Jarabeck to the extent she requests "prospective, declaratory, or injunctive relief governing an officer's future conduct." *MCI Telecomm. Corp.*, 271 F.3d at 506 (citing *Pennhurst II*, 465 U.S. at 102-03). *See also O'Callaghan*, 661 F. App'x at 182 ("[T]he Eleventh Amendment does not generally bar prospective declaratory or injunctive relief."). This Court finds that Lloyd's first[13] request for injunctive relief to "allow Lloyd to make public comments at any future vet board meeting," *see* Am. Compl. ¶ 1, p. 38, seeks prospective injunctive relief. Lloyd has sufficiently alleged that Defendants will not allow her to make such comments at future meetings. *See O'Callaghan*, 661 F. App'x at 182 (holding that the plaintiff has the "burden of showing a substantial likelihood that [s]he was likely to suffer some future injury at the hands of a named party"). Accordingly, if this restriction violates Lloyd's Constitutional rights, which will be analyzed below, she may obtain injunctive relief. *See Berthesi v. Pa. Bd. of Prob.*, 246 F. Supp. 2d 434, 438 (E.D. Pa. 2003) ("[T]he federal courts can issue an injunction against a state officer if there is evidence of ongoing violations of federal law and the injunction will afford a plaintiff prospective relief from the illegal state action."). Eleventh Amendment immunity is therefore

---

[13]    Lloyd's remaining injunctive relief requests, *see* Am. Compl. ¶¶ 2-7, p. 38 (directing Defendants to provide copies of records, ordering that "any complaint against any vet is made public," and requiring Defendants to discipline veterinarians), are not based on an ongoing violation of federal law. *See Thornton v. New Jersey*, No. 24-3084, 2026 U.S. App. LEXIS 5606, at *5-6 (3d Cir. Feb. 25, 2026) (finding that the immunity exception did not apply because the plaintiff "did not sufficiently plead an ongoing violation of federal law—her allegations related to past conduct, and to the extent that she claimed that she was at risk of further harm, her allegations were conclusory and speculative at best").

Lloyd's request for "[d]eclaratory relief that states Defendants have violated the 1st amendment and Sunshine law by refusing to allow Lloyd to speak and muting Lloyds [sic] microphone on September 5 2025," *see* Am. Compl. ¶ 8, p. 39, is not proper. *See O'Callaghan*, 661 F. App'x at 182 (A declaration that a defendant previously violated the plaintiff's rights "is not a proper use of a declaratory judgment, which is meant to define the legal rights and obligations of the named parties in anticipation of future conduct, not to proclaim their liability for past actions.").

not a bar to Lloyd's injunctive relief claims against Roberts, Keefer, and Jarabeck.  This Court will address the merits of her claims.

### C.      The Sunshine Act claim is dismissed.

As previously explained, the PSBVM is immune from suit in federal court on Lloyd's Sunshine Act claim.  *See* 65 Pa. C.S. § 715 ("The Commonwealth Court shall have original jurisdiction of actions involving State agencies and the courts of common pleas shall have original jurisdiction of actions involving other agencies to render declaratory judgments or to enforce this chapter by injunction or other remedy deemed appropriate by the court.").  Thus, as to the PSBVM, Count I is dismissed without prejudice to an action to be filed in state court.[14]

The Sunshine Act claim is also dismissed as to Roberts, Keefer, and Jarabeck because it "is clear from the language of the statute that any action brought under the Sunshine Act must be brought against an agency."  *Miller*, 672 F. Supp. 3d at 49-50 (finding that the Sunshine Act claims against the individual defendants failed as a matter of law).  As to Roberts, Keefer, and Jarabeck, Count I is dismissed with prejudice.[15]

### D.      Lloyd's First Amendment claim is dismissed.

Lloyd alleges that her First Amendment right to free speech was violated when Defendants muted her microphone at the PSBVM meeting on September 5, 2025.  *See* Am.

---

[14]     This Court expresses no opinion on the merits of the Sunshine Act claim against the PSBVM.  Lloyd is advised that if she intends to refile this claim in the appropriate state court she may need to take additional steps to preserve the filing date for statute of limitation purposes. *See* 42 Pa. Cons. Stat. Ann. § 5103(b)(1) ("Where a matter is filed in any United States court for a district embracing any part of this Commonwealth and the matter is dismissed by the United States court for lack of jurisdiction, any litigant in the matter filed may transfer the matter to a court or magisterial district of this Commonwealth by complying with the transfer provisions set forth in paragraph (2).").

[15]     This Court finds that leave to amend would be futile.  *See Alston*, 363 F.3d at 235; *Harper*, 589 F. App'x at 69 (finding that an amendment would be futile because the claims failed as a matter of law).

Compl. ¶ 20.  This meeting was a limited public forum.  *See Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*, 877 F.3d 136, 142 n.2 (3d Cir. 2017) (stating that "a school board meeting is a limited public forum"); *Galena*, 638 F.3d at 199 (determining that the "Council meeting was a limited public forum inasmuch as the meeting was held for the limited purpose of governing Erie County and discussing topics related to that governance").

As such, the PSBVM could lawfully limit speech "so long as the content is tied to the limitations that frame the scope of the designation, and so long as the regulation is neutral as to viewpoint within the subject matter of that content."  *See Eichenlaub*, 385 F.3d at 281. *See also Zeigler v. Bartha*, No. 2:24-CV-01573-MJH, 2024 U.S. Dist. LEXIS 219630, at *4 (W.D. Pa. Dec. 4, 2024) (referring to such limitations as "relevancy-based restrictions").  Contrary to Lloyd's suggestion that the "meeting was open to any comment about any topic," *see* Am. Compl. ¶ 24, a PSBVM meeting is "not open for endless public commentary speech but instead is simply a limited platform to discuss the topic at hand," *Miller*, 672 F. Supp. 3d at 40 (internal quotations omitted). *See also Madison Joint Sch. Dist. v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 175 n.8 (1976) ("Plainly, public bodies may confine their meetings to specified subject matter and may hold nonpublic sessions to transact business.").  Public comments were limited to matters within the PSBVM's adjudicatory functions.[16]  *See* Minutes[17] 9:17-21 ("Keefer stated

---

[16]    *Accord* Minutes 3:6-22 (The PSBVM met in a separate, closed session "for the purpose of conducting quasi-judicial deliberations.").

[17]    Because the minutes are a matter of public record, *see* https://www.pa.gov/agencies/dos/department-and-offices/bpoa/boards-commissions/veterinary-medicine/board-meetings (last visited March 18, 2026), this Court may consider them in deciding the Motion to Dismiss, *see Clark v. Colwyn Borough*, No. 12-3668, 2013 U.S. Dist. LEXIS 18447, at *12-13 n.5 (E.D. Pa. Feb. 12, 2013) (holding that the court could consider the minutes from the borough's council's meeting on a motion to dismiss because they were a matter of public record (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004))).

that pursuant to the Pennsylvania Supreme Court decision in *Lyness v. State Bd. of Medicine*, 605 A.2d 1204 (Pa. 1992), the Board was prohibited from commingling the prosecutorial and adjudicatory functions."); *Lyness v. Commonwealth*, 605 A.2d 1204 (Pa. 1992) (holding that the state board was prohibited from the "commingling of prosecutorial and adjudicative functions").

Such restrictions were viewpoint neutral as they limited *any* discussion about specific veterinarians that were the subject of individual complaints. *See Mesa v. Hudson Cnty. Bd. of Chosen Freeholders*, No. 09-3576 (KSH), 2011 U.S. Dist. LEXIS 112358, at \*22-23 (D.N.J. Sep. 30, 2011) (concluding that the restriction on the plaintiff's speech during a board meeting "had nothing to do with [his] viewpoint;" rather, the objection was "to the discussion of a matter that was not on the agenda" and was therefore not based on viewpoint); *McBreairty v. Miller*, No. 1:23-cv-00143-NT, 2024 U.S. Dist. LEXIS 87231, at \*16-17 (D. Me. May 15, 2024) (concluding that the board's policy restricting any discussion about the conduct of a particular school employee was viewpoint neutral). The restrictions were reasonable as they limited comments to topics of public interest, as opposed to a private complaint, and to topics within the PSBVM's adjudicatory functions, as opposed to its prosecutorial duties. *See Eichenlaub*, 385 F.3d at 281 (concluding that the actions of "the chairman of the meeting[, who] sought to restrict the discussion to topics of public interest and requested that [the plaintiff] not discuss matters of private concern . . . served the function of confining the discussion to the purpose of the meeting"). *See also Marshall v. Amuso*, 571 F. Supp. 3d 412, 426 (E.D. Pa. 2021) (stating that the "School Board could sensibly prohibit personal attacks not related to the School Board's business"); *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 760 (5th Cir. 2010) (concluding that the school board's policy prohibiting comments about a particular individual was reasonable

because such speech "could derail the agenda for the meeting and risk unnecessary disclosure of private information about employees or students").

Moreover, Defendants notified Lloyd of these restrictions, before and at the meeting, and only limited her speech in accordance with these restrictions.  *See* Emails.  They afforded Lloyd the opportunity to continue speaking at the meeting if "she had something else to discuss."  *See* Minutes 9:15 – 12:11.  Defendants also provided Lloyd with an avenue to voice her concerns: by filing a complaint with the PSBVM.  *See* https://www.pals.pa.gov/#!/ComplaintForm.  She was specifically informed about this process.  *See* Roberts Email dated Aug. 28, 2025, at 02:18:05 (". . . If you wish to bring a complaint to the Board's attention, you may do so through the formal complaint process, which is available at pals.pa.gov. In the navigation options on the left side of the page, you will find a link to "File a Complaint. . . ."); Keefer Email dated Sept. 4, 2025, at 8:19 AM (same).  Lloyd admits that she filed a complaint(s).

For all these reasons, Lloyd fails to state a First Amendment violation.  Count II is dismissed with prejudice.[18]

### E.      Lloyd's equal protection claim is dismissed.

Lloyd alleges that Defendants allowed other members of the public to speak about whatever they wished, while preventing her from doing the same, which she claims violated her equal protection rights.  *See* Am. Compl. ¶¶ 188, 200.  The Amended Complaint does not identify any specific person or define what topics such person was permitted to discuss.  Without

---

[18]     This Court denies leave to file another amended complaint because Lloyd failed to cure her pleading deficiencies after receiving notice of the same in the first Motion to Dismiss.  *See* *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144-45 (3d Cir. 2002) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."), *cert. denied* 537 U.S. 1113 (2003).  Furthermore, under the facts of this case, leave to amend would be futile.  *See* *Alston*, 363 F.3d at 235.

specific factual allegations, Lloyd fails to state a claim.  *See Joey's Auto Repair & Body Shop v. Fayette Cty.*, 785 F. App'x 46, 49 (3d Cir. 2019) (affirming dismissal of a "class of one" equal protection claim where the plaintiffs failed to allege specific examples of how the one identified business was similarly situated).[19]

Moreover, the minutes of the meeting show that only one other person spoke after the meeting was open to public comment.  This person "informed the Board that she is working with the Pennsylvania Veterinary Medical Association (PVMA) on the amendment of HB 1750[20] that is being drafted to address some of their concerns."  *See* Minutes 9:9-13, https://www.pa.gov/content/dam/copapwp-pagov/en/dos/department-and-offices/bpoa/veterinary/minutes/Vet-09-05-25.pdf.  This comment was directly related to Keefer's "Report of Board Counsel - HB1750 and SB950," which was discussed earlier in the meeting.  *See* Minutes 7:4 – 8:14 (Keefer "provided information on legislation that could affect veterinarians. This legislation included House Bill 1750 and Senate Bill 950, both involving the mishandling of pet remains. . . .").  More importantly, this comment was not about a specific veterinarian, a pending investigation, or in any way related to a complaint or to the Board's

---

[19]    Defendants also argue that qualified immunity bars Lloyd's class-of-one equal protection claim because her theory of liability is not clearly established.  *See* Mot. 9-11.  Defendants rely on Judge Marston's decision in *Miller*, but that case is distinguishable.  *See Miller v. Goggin*, No. 22-3329-KSM, 2024 U.S. Dist. LEXIS 59153 (E.D. Pa. Mar. 29, 2024).  Although *Miller* also involved an equal protection class-of-one claim arising from a public meeting, the right at issue in that case was removing one participant from a public meeting over another.  *See id.* at *18-19.  In finding that the right was not clearly established, Judge Marsten noted that "it is the established law in the Third Circuit that disruptive individuals do not have a constitutional right to remain at public meetings."  *Id.* (citing cases).  In contrast here, Lloyd was not being disruptive and the right at issue is allowing one person to speak on a particular topic while precluding similarly situated persons from doing so.

[20]    House Bill 1750 is "[a]n Act providing for disclosure of cremation services for deceased animals, for distribution and certification, for required notices, for holding facility standards, for recordkeeping requirements and for enforcement; and imposing penalties."  *See* https://www.palegis.us/legislation/bills/2025/hb1750 (last visited March 18, 2026).

prosecutorial functions, which was all Lloyd was precluded from discussing. *See id.* 9:21 – 10:8 (Ms. Keefer told Ms. Lloyd that she "must refrain from presenting to the Board information relating to a specific licensee that may be in the investigatory process and matters which had not yet come to the Board after formal charges were filed" and "asked Ms. Lloyd if she wanted to remark on matters that did not fall within the scope Ms. Keefer outlined.").  Accordingly, Lloyd was not "intentionally treated differently from others;" rather, there was a rational basis[21] for allowing the other person to speak about an administrative/legislative matter while precluding Lloyd from speaking about a prosecutorial/investigative matter, which defeats her equal protection claim.  *See Willowbrook*, 528 U.S. at 564 (holding that to state a successful equal protection claim on a class-of-one theory, the plaintiff must allege "that there is no rational basis for the difference in treatment" from others similarly situated).

Count III is dismissed with prejudice.[22]

### F.    Lloyd's due process claims are dismissed.

Lloyd's due process claims are based on Defendants: (1) not allowing her to speak at the PSBVM meeting on September 5, 2025, (2) not investigating her complaints, and (3) dismissing her complaints about the deaths of her dogs without holding a hearing, at which she could present evidence.  The Amended Complaint does not specify whether Lloyd is alleging a substantive or procedural due process claim, so this Court will consider whether she has stated either claim.  Lloyd's allegations suggest two possible protected interests.

---

[21]    *See* Section IV(D) *infra*
[22]    This Court denies leave to file another amended complaint because Lloyd failed to cure her pleading deficiencies after receiving notice of the same in the first Motion to Dismiss.  *See Krantz*, 305 F.3d at 144-45.  Furthermore, in light of the minutes from the meeting, this Court finds that leave to amend would be futile.  *See Alston*, 363 F.3d at 235.

First, Lloyd has a protected liberty interest in her right to free speech.  *See Gitlow v. New York*, 268 U.S. 652, 664 (1925) (holding that "the 'liberty' protected by the Fourteenth Amendment includes the liberty of speech").  This interest impacts only the first basis of her due process claims: that Defendants did not allow her to speak at the PSBVM meeting on September 5, 2025.  However, because the First Amendment claim fails for the reasons set forth above, the due process claims based on this interest also fails to state a claim.  *See Robinson v. Limerick Twp.*, No. 04-3758, 2005 U.S. Dist. LEXIS 4079, at *7-8 (E.D. Pa. Mar. 18, 2005) (concluding that the deprivation of liberty claim, which was based on freedom of speech, failed because the First Amendment claim was unsubstantiated).  The first basis of the due process claims also fails because Lloyd's allegations do not show that Defendants were either reckless or grossly negligent in denying her the opportunity to speak about her complaints, or that they made a deliberate decision to deprive Lloyd of due process.  *See Jordan*, 20 F.3d at 1277 (holding that "a plaintiff who wishes to sustain a § 1983 claim based upon a violation of procedural due process must, at a minimum, prove recklessness or 'gross negligence' and in some instance may be required to show a 'deliberate decision to deprive' the plaintiff of due process").  To the contrary, the allegations, emails, and minutes from the meeting show that Defendants only denied Lloyd's ability to speak about a limited topic- specific veterinarians that may be the subject of a complaint under investigation.  *See* Emails dated Aug. 28, 2025 (Roberts, in response to Lloyd's request to speak about "vet medmal. . .," denied Lloyd's request to speak "for the stated purpose"); Minutes 9:21 – 10:1 (Keefer advised Lloyd that she "must refrain from presenting to the Board information relating to a specific licensee that may be in the investigatory process and matters which had not yet come to the Board after formal charges were filed and a hearing held"); Minutes 10:20-22 (Jarabeck "objected to Ms. Lloyd's commenting on

somebody in the public based upon a complaint process").  Further, Defendants restricted Lloyd from speaking about these issues because they believed it violated state law.  *See, e.g.* Email dated Aug. 28, 2025 (Roberts advised Lloyd that her request to speak "for the stated purpose must be denied, as it would constitute a violation of the *Lyness* mandate"); Minutes 9:21 – 10:2 (Keefer limited Lloyd's speech because "it would constitute a violation of the *Lyness* mandate"); Minutes 10:11-22 (Jarabeck objected because "any case could not be discussed before the Board due to the prejudice noted by the *Lyness* ruling").  Before muting her microphone, Defendants repeatedly warned Lloyd about the limited topics that could not be discussed at the meeting and, also, gave her an opportunity to continuing speaking if "she had something else to discuss."  *See* Minutes 9:15 – 12:11.  Accordingly, their actions were neither reckless nor grossly negligent, nor did they made a deliberate decision to deprive Lloyd of due process.

Second, Lloyd has a property interest in her dogs, which impacts the second and third basis of her due process claims regarding her complaints.  However, because Lloyd alleges that two private veterinarians, not Defendants, "killed" her dogs, Defendants did not deprive her of a protected property interest.  *See* U.S. Const. amend 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law.").  Moreover, the second and third bases of her claims also fail because Lloyd did not have a right to either an investigation of or a hearing on her complaints.[23]  *See Whitehead v. City of Phila.*, No. 13-2167, 2014 U.S. Dist. LEXIS

---

[23]    Although this conclusion is based on the due process required by law, this Court also notes that the PSBVM did not promise an investigation, a hearing, or any other particular outcome.  *See* https://www.pa.gov/services/dos/file-a-complaint-against-a-pa-licensed-professional#accordion-91ca259f6c-item-fdeb954fe6  (last accessed March 20, 2026) (explaining that the Professional Compliance Office "reviews thousands of complaints per year . . . to determine what investigation, if any, is appropriate in light of the allegations"); https://www.pals.pa.gov/#!/ComplaintForm (last accessed March 20, 2026) (The verification on the PSBVM complaint form advises the complainant that the "matter [may be] closed without the initiation of formal disciplinary action.").

21000, at *4 (E.D. Pa. Feb. 19, 2014) ("There is no constitutional right to a police investigation."); *Collura v. Disciplinary Bd. of the Supreme Court of Pa.*, No. 11-5637, 2013 U.S. Dist. LEXIS 119194, at *34 (E.D. Pa. Aug. 20, 2013) (holding that the plaintiff, who filed a complaint with the Disciplinary Board of the Supreme Court of Pennsylvania, had "no right to any particular outcome or procedure beyond, perhaps, the ability to file a complaint, which he was, according to his own Amended Complaint, permitted to do").  The procedural due process claim is therefore dismissed.

For these reasons and because the Amended Complaint contains no allegations that Defendants' conduct shocked the conscience, Lloyd also fails to state a substantive due process claim.  *See Kane*, 902 F.3d at 192 (To state a claim for a violation of substantive due process rights, a plaintiff must show that ". . . the government's deprivation of that protected interest shocks the conscience."); *J.R.*, 534 F. App'x at 108 ("'[O]nly the most egregious official conduct' violates substantive due process." (quoting *Miller*, 174 F.3d at 375 ("To generate liability, executive action must be so ill-conceived or malicious that it 'shocks the conscience.'"))).  Accepting all allegations as true, Defendants' behavior does not rise to the level of conscious-shocking.  *See Schieber v. City of Philadelphia*, 320 F. 3d 409, 416-21 (3d Cir. 2003) (concluding that where the police responded to a neighbor's 911 call reporting a woman screaming in an apartment, the officers' failure to kick down the door to the apartment where the victim was inside being raped and murdered did not amount to "shocks the conscious" in the absence of other evidence).  Moreover, to the extent the substantive due process claim is based on Lloyd's liberty interest of free speech, it fails because this claim is more properly analyzed under the First Amendment.  *See Graham*, 490 U.S. at 395 (holding that where a Constitutional Amendment "provides an explicit textual source of constitutional protection. . .,

that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims"); *Dennison v. Pa. Dep't of Corr.*, 268 F. Supp. 2d 387, 400-01 (M.D. Pa. 2003) (determining that the plaintiff could not prevail on his free speech/substantive due process claim because the "free speech claim falls under the First Amendment"). The substantive due process claim is therefore dismissed.

Count IV is dismissed with prejudice.[24]

**V.     CONCLUSION**

For the reasons set forth herein, all claims against the PSBVM are dismissed because it is immune from suit in federal court and, additionally, it is not a "person" under § 1983. All § 1983 claims are dismissed against Roberts, Keefer, and Jarabeck because the Amended Complaint fails to show a violation of Lloyd's right to free speech, to equal protection, or to due process. The Sunshine Act claim is dismissed as to the individual defendants because such a claim may only be brought against state "agencies." All claims are dismissed with prejudice, except for the Sunshine Act claim against the PSBVM, which is dismissed without prejudice to Lloyd's ability to file in the appropriate state court.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[24]     This Court finds that leave to amend would be futile. *See Alston*, 363 F.3d at 235.